## SOLOMON GILES *versus* J. T. CHURCHILL.

When the heirs of an intestate agreed to administer his estate without letters of administration, and one of them paid a creditor of the deceased his debt in goods belonging to the estate of the intestate, it was held that another of the heirs, who was afterwards duly appointed administrator of the estate of the deceased by the judge of probate, could not maintain trover against the creditor, for the goods he had received.

THIS was an action of trover for four steers, in which the plaintiff sued as administrator of the estate of Joseph Giles, deceased.

The cause was tried upon the general issue, at January term, 1830, and a verdict taken by consent for the defendant, subject to the opinion of the court upon the following case.

The intestate died in September, 1828, leaving some property, and owing several debts. John B. Giles, his brother, at the request of the present plaintiff, another brother of the deceased, and with the assent of the other heirs, undertook to administer the estate without letters of administration, and paid debts of the intestate to the amount of $300, or $400, and continued to act as administrator from September, 1828, to the middle of February, 1829. The other heirs agreed that John B. Giles should pay all the debts, and receive all the estate, but it did not appear that the plaintiff was a party to this agreement. Among the creditors was the defendant. And the said John B. Giles delivered to the defendant, the four steers mentioned in the declaration, under a contract that they should go in satisfaction of the debt due to the defendant, and of other debts of the intestate. The defendant had been told that John B. Giles proposed to administer the estate, and pay the debts of the intestate without letters of administraton.

Afterwards, administration of the estate was committed to the plaintiff, in due form, and a demand having been made and the defendant having refused to deliver the steers to the plaintiff, he brought this action.

*James Bell,* for the plaintiff.

The only question raised by the facts in this case is, did the delivery of the steers by John B. Giles, an executor *de son tort,* to the defendant, a creditor of Joseph Giles, the intestate, in payment of his debt, change the property so that the present action will not lie ?

We contend, that the executor, *de son tort,* having no property in the chattels could convey none to the defendant ; but that the latter, like other purchasers, who do not buy in market overt, was bound to look to the title of

the seller. It is conceived, that the doctrine, that an executor, *de son tort*, is discharged in an action against him by a creditor, by a payment of debts to the amount of the assets which came to his possession has no application to the present question, as it is founded on the technical reason, that a creditor, who, by bringing an action against one as executor acknowledges his right to that character, cannot deny him the right of pleading *plene administravit* like other executors.

In actions by a rightful executor, against those who intermeddle with the estate, a different rule seems to prevail. In an action of trover between these parties, it is no answer that the defendant delivered the chattels to a creditor in payment of his debt. Carthew, 104 ; 2 Bacon's Abr. 390 ; 4 East, 441. For this would be to take from the rightful administrator his right to prefer one creditor to another, or to prefer himself to creditors in equal degree.

In trover against an executor, *de son tort*, it is no defence, that the chattels were taken in execution on a judgment against him by a creditor of the intestate, though this would have been a good defence in an action against him by a creditor. 1 Ventris, 349 ; 4 Bacon's Abr. 391. But in such a case, the amount paid to a creditor may be, according to some authorities, recouped in damages, although it cannot be pleaded in bar of the action. 4 Bacon's Abr. 390.

This must be on the ground, that such a delivery of the chattels in payment of the debt is a conversion ; and if a conversion in the executor *de son tort*, it seems to be equally a conversion in the creditor receiving them. The latter indeed is equally an executor *de son tort* with the former. There are cases of trover by rightful executors against executors *de son tort* delivering the goods of the deceased in payment of his debts.

The only authorities I have discovered as to similar suits against creditors, who have received the goods in

payment, and therefore directly in point in this case, are a dictum of Holt *arguendo* in *Parker* v. *Kett*, 1 L. Raymond, 661, that if an executor *de son tort* deliver money in a bag to a creditor in payment of his debt, the rightful executor cannot recover it back; and the case of *Mountford* v. *Gibson*, 4 East, 441, in which it was decided that an action of trover will lie by an administrator against a creditor, who received a quantity of iron of the intestate from his widow in payment of a debt. This case, unless it can in some way be distinguished from the present case, seems to settle the principle upon which it is to be decided. It differed from this case in the circumstance that the widow who delivered the chattels to a creditor, had done no other act which could make her an executrix *de son tort*, while in this case, J. B. Giles had for some time paid debts of the intestate and assumed the control of the property. I admit, the judges in *Mountford* v. *Gibson* confine their opinions to cases where the delivery of the chattels for which the action is brought is the only act of intermeddling. That was all the case before them required. But it is not to be inferred from this, that a different decision would have been made, if the widow had, before the delivery of the chattels, made herself an executrix *de son tort* by other acts, or had proceeded in a regular course of administration. Lord Ellenborough, and Lawrence, J. expressly guard against any such inference. The first observes, "if it were necessary, it would be fit to consider whether in any case, a delivery by one who had no lawful authority, would be a bar to an action of trover by a rightful administrator." And Lawrence, J. questions the general doctrine "that any payment made to a creditor by an executor *de son tort* shall be good against the lawful administrator." Indeed, this doctrine is not fairly to be deduced from an examination of this whole case.

It is difficult to understand, why a delivery of chattels, by one who has, in repeated instances, intermeddled

with the estate and thereby made himself an executor *de son tort*, should change the property ; while in cases of a delivery by one, who has in no other instance intermeddled, a different doctrine should prevail.  A single act of intermeddling makes an executor *de son tort*.  And even if the doctrine be sound, that in cases where a creditor receives goods from one whom he may fairly presume to be a rightful administrator, he shall not be liable, it cannot be applied in this case, for here the creditor had notice that he was dealing with one who had no authority.

The doctrine, on which the defendant relies, would altogether change, in several important particulars, the course of administration according to our statutes.  For if a delivery of the chattels in a case like this changes the property, and upon the appointment of an administrator the estate should prove to be insolvent, then the creditor who received the chattels would be paid in full to the injury of the other creditors.  It is supposed that it will not be contended that the validity of the transfer can depend upon the solvency of the estate.  And if not, the consequence of the admission of such a doctrine, would be an authorized scramble among the creditors to be the first " to plant a beggar in the house of the intestate," and receive from him payment in the goods of the intestate. As an executor, *de son tort*, of an insolvent estate cannot in this state defend a suit against him by showing a payment of debt to double the value of the assets which have come to his hands, it seems clear, that in such a case, a creditor receiving chattels in payment from him can acquire no title to them.  *Neal* v. *Baker*, 2 N. H. Rep. 477.

*I. Bartlett*, for the defendant, cited the following authorities.  4 East, 441 ; 1 L. Raymond, 658, *Parker* v. *Kett* ; 5 Coke, 30 ; 1 Salkeld, 295 ; 3 ditto 161 ; Com. Dig. Administrator, C. 3.

*By the Court.*  We are inclined to think that an executor, *de son tort*, cannot by a sale of the goods of the deceased give any title to the purchaser against a rightful

executor or administrator.   2 Starkie's Ev. 551 ; 5 Coke, 31 ; Lovelass, 50 ; Yelverton, 138, note, 3 ; 4 Burn's Ec. Law, 190 ; 1 Ventris, 349 ; 5 B. & A. 744, *Woolley* v. *Clark* ; Wentworth, 181 ; Com. Dig. Administrator, C 3.

But in this case John B. Giles undertook to settle the estate of the deceased by the request of this very plaintiff. Whatever John B. Giles did, then, may be considered as done at the request, and with the assent of the plaintiff ; and the question is, whether he can now maintain trover against this defendant after having thus assented to the sale ?

We are of opinion that he cannot.   We think the sale stands on the same ground as if it had been made by the plaintiff himself, in which case, it is clear he could not maintain the action.   In the case of *Kenrick* v. *Burges,* Moor, 126, it was held, that if one as executor *de son tort,* sell goods and afterwards take administration, the sale is good by relation.   And in *Whitehall* v. *Squire,* Carthew, 103 ; 1 Salkeld, 295, it was held by two judges, against the opinion of Holt, that where one bought goods of an executor, *de son tort,* and afterwards took administration, he could not maintain trover against the executor *de son tort,* to whose act he had assented.

If, in this case, the estate of the intestate shall turn out to be insolvent, perhaps the plaintiff may recover of the defendant what the latter may have received beyond his just share of the estate.   17 Mass. Rep. 380 ; 3 Pick. 261.

*Judgment on the verdict.*