# ROCKINGHAM,

## DECEMBER TERM, A. D. 1843.

---

## KITTREDGE, Admr., Appellant, *vs.* BETTON, Ex'ix.

A settlement out of court, between a guardian and his former ward who has come of age, and a release to the guardian, is not a compliance with the condition of his bond, which requires the guardian to render an account when required in the probate court.

But the judge of probate may receive it as evidence that he ought not to be required to settle a farther account.

If the guardian on being cited to the probate court relies on such a settlement, he should bring the settled account into court, that the ward may there surcharge and falsify.

The administrator of a ward has the same privilege.

The death of a guardian and the insolvency of his estate while such proceedings are pending, is no cause for dismissing them, but his executor should be cited in.

Or if the guardian die, not having so rendered his account, his executor may at once be cited in to account in the probate court.

In such a case as that above stated, the judge of probate should order an entire account, if cause be not shewn to the contrary.

But a ward, who, three years after coming of age has received the money due him, and given a receipt without a regular accounting in court, is not entitled afterwards to insist that his guardian, holding an unimpeached discharge, should be required to render into court the items of the settled account.

In this respect his administrator stands in no better situation than the ward himself.

The burden of proof in such case is on the ward, or his representative, to impeach the settlement.

Undue influence will not be supposed to exist, on the part of a guardian over his former ward, in a settlement had more than three years after he attained his majority.

Nor if other accounts have existed between the same parties in the relation of attorney and client, can the existence of that relationship, and the fact that they were settled at the same time, be allowed to affect proceedings for the settlement of the guardianship account.

Kittredge *v.* Betton.

A year and a half having elapsed after such a settlement, without any claim for the correction of errors, neither he, nor (in case of his subsequent death) his administrator, can ask for an entire account except upon evidence of fraud.

Whether if (no fraud being shown,) the evidence makes it probable that some errors occurred, and some items were twice charged in the settlement, of which the guardian omitted to give any explanation, the omission would authorize an inference against him, *quære?*

But the like omission on the part of his executrix who had not the same knowledge of the settlement as the testator, would not authorize any such inference.

The guardian or his estate must account for all claims arising from errors, mistakes, omissions and over-charges in such settlement, notwithstanding the settlement and the discharge from the ward. But, farther than this, it is not open to the ward to contest the settlement.

It is not the duty of the guardian's estate, under such circumstances, to do more than to stand on its defence against such evidence, on those points as may be produced on the ward's behalf.

APPEAL from the decree of the judge of probate.

At a probate court for the county of Rockingham, in January, 1841, Rufus Kittredge, as administrator with the will annexed of George Kittredge, presented a petition setting forth that Thornton Betton, of Derry, in that county, was appointed Nov. 6, 1832, guardian of said George, then a minor, and took upon himself that trust, and that a large amount of the property of said George passed into his hands; that the said George long since attained the age of twenty-one, but that Betton has never settled any account of his guardianship, but neglects so to do. Wherefore, the petitioner prayed that the said Betton might be ordered to render and settle his account of his guardianship in the probate court.

Betton appeared, in pursuance of an order of notice, and objected to the prayer of the petition, and thereupon produced as evidence of a settlement between the guardian and ward, a writing, signed by the parties, of which the following is a copy: " Aug. 16, 1838. Then reckoned and settled Thornton Betton and George Kittredge all matters and dealings while said Betton was guardian of said George, and as to all matters and dealings, services and moneys advanced

by said Betton in the several lawsuits in which said George has been interested, wherein said Betton has been counsel, and find due said Betton the sum of twenty-three hundred dollars." The execution of this writing "having been admitted, and having been in no way impeached," it was decreed by the court of probate " that no farther account of his said guardianship be ordered or required of said Thornton Betton, and that said petition be dismissed."

From this decree the petitioner claimed an appeal, setting forth as reasons therefor, 1. That Betton should have been required to produce and settle a full account of his guardianship. 2. That he had rendered no account in said court, or elsewhere, although he had received nearly $10.000 worth of property of the ward. 3. That the settlement with his ward and the giving of said receipt was obtained by fraud, importunity and undue influence. 4. That at the time of settlement, the relation, duties, obligations and influences of guardian and ward continued between them, Betton still having the custody and control of the goods and estate of said George. 5. That at the same time the relation of attorney and client existed, or had existed just before, and for a long time. 6. That from these causes Betton had such influence or control over his ward and his affairs as greatly to diminish and impair, or to overcome his capacity to assert and maintain his rights, &c. 7. That at the time of the alleged settlement it was agreed that the account should be at any time opened on request. 8. That when the receipt was given, Betton's guardian's account was confused with other accounts, so that his ward could not distinguish between them, or know what did belong to his account ; and because said George was on farther reflection and examination in his life-time greatly dissatisfied with said supposed settlement, and intended to, and if he had lived would, have insisted on the account being opened, and equitably adjusted. 9. That Betton never exhibited to said George any orderly account, nor in any way furnished him the means of

properly judging of his proceedings as guardian.   10.   That in settling, said George was charged with $1500, "for board-bill, services, and J. Thorn's bill, without saying what was due on the several accounts separately, and no such sum being due.   11.   That in the settlement, the ward was erroniously charged with these items, viz. : $2802.62 on account of certain notes to Betton, (when given of the value of about $550,) and of $1389.17 for advances, and of $863.45 paid to sundry persons on his account; also $2341.99 as paid by him to sundry persons named, some of which were entered twice.   12.   That Betton was not in that settlement charged with divers sums and items, as he should have been, viz. : the price of real and personal estate sold or appropriated by him, and the amount of various demands collected by him on notes, accounts, and for rents, &c.   13.   That Betton was not charged with a large balance of interest justly due from him.   14.   That there was a balance due from Betton on the guardian account more than large enough to pay any indebtedness to him from said George on any other account.   15.   That a large balance is in justice and equity due from him to his ward's estate.   16.   That said George, on said alleged settlement was charged with large sums of money without any cause or consideration.   17.   That a note given by George to Betton for about $3000, secured by mortgage on real estate, given on no other consideration than the pretence of securing moneys "which the said Betton had advanced to said George, and for said Betton's services, and for the purpose of farther advances and services," was not wholly cancelled and given up on said supposed settlement.   18.   That such settlement was made secretly between Betton and George, and said receipt executed without the knowledge, approbation or advice of any friend or relation of said George, and while the relation of attorney and client subsisted between them.

Betton died September 16, 1841, before the entry of the appeal in this court, and his estate was represented insolvent.

His executrix having been cited to come in, *H. F. French* and *Christie*, on her behalf, moved the court to dismiss the appeal, 1. On the ground that the ward having attained his majority, and settled with and discharged the guardian, the authority of the judge of probate was at an end, and he could not require another settlement. But if the judge might require an account, the guardian is to account only when ordered; it is a matter within the discretion of the court, and the decision of the judge is final. 2. Because the statute of 1822, *N. H. Laws, Ed.* 1830, *p.* 364, provides that no action shall be sustained against the executor or administrator of an insolvent estate, except as is provided in that act, which gives no such remedy as this. The estate having been decreed to be administered as an insolvent estate, the claim should go before the commissioner.

*James Bell*, and *Porter*, for the appellant, contended that by statute guardians were required to settle their accounts in the probate court, and to respond to the ward; that the probate court was a court of equity having power to investigate this settlement and see whether it is just, and for this purpose it will look behind the receipt, and that the representation of insolvency could not affect this proceeding.

PARKER, C. J. We are of opinion that the motion to dismiss this appeal cannot prevail. Betton was guardian, and his guardianship bond required that he should render an account when required in the probate court. This he has never done. Being cited for that purpose, he appeared and produced evidence of a settlement with the ward and a discharge by him; and this satisfied the judge of probate that he ought not to be required to settle a farther account. But this settlement was not a compliance with the condition of the bond, and did not debar the judge of probate from requiring a settlement to be made in court, if the circumstances of the case were such as to require a farther settlement.

If there were fraud in the settlement with the ward, that might vitiate the settlement entirely, and leave the case to be proceeded in as if it had not been made. If errors and mistakes had occurred they ought to be corrected; and a proper mode of correction may be to require the guardian to account for what he had thus not accounted for. Whether the error arose from omission or over-charge, it may be reached in that way. If the error be one of omission, the guardian has not accounted to that extent. If it be by over-charge on his part, by means of that charge he retains so much of the estate of the ward in his hands. In either case, therefore, there may still be an account to render. Or, in another form, the account which has been settled out of court may be required to be brought into the probate court, if the guardian relies upon that settlement, and the ward (or in this case his administrator) be permitted, in the language of the courts of equity, to "surcharge and falsify."

The death of Betton and the representation of insolvency does not take away the jurisdiction of the probate court to require the settlement of the account. This is not a suit within the meaning of the statute. The settlement of an account is the proper mode to ascertain the sum for which a guardian or an executor or administrator is chargeable in the probate court. If proceedings at law may not afterwards be maintained against the executrix in this case upon the bond, by reason of the representation of insolvency, this furnishes no reason why the proper accounting should not be had to lay the foundation of a claim to be presented to the commissioner. And, besides, this is the proper mode in ordinary cases to lay the foundation for proceedings against the sureties in the guardianship bond.

Where a guardian might, if living, have rendered or been required to render an account, his executor or administrator, on his decease should render it, and may be cited for that purpose. Here the guardian had been cited before his death, but it is not necessary that the proceedings should abate and

new proceedings be commenced. The executrix is well made a party by being cited in to render the account if the testator should have rendered one.

Whether any farther account shall be required, and, if any, whether there shall be an entire account of the guardianship, or whether the amount shall be only in relation to the errors and mistakes shown to have occurred, must depend upon the evidence.

After the delivery of this opinion, the parties proceeded to take evidence, from which it appeared that Betton, who had previously been guardian *ad litem* for George Kittredge, was appointed guardian in the probate court, November 6, 1832. George Kittredge became of full age, March 31, 1835. After that time Betton was counsel for him in certain matters litigated in court. The parties were engaged two or three days in making the settlement, which included all matters between them, and was closed September 16, 1838. Kittredge expressed his satisfaction with the settlement upon different occasions after it was made. He died in Michigan, April 28, 1840, having removed to that state.

A memorandum found among his papers after his death, containing some indication of his dissatisfaction with the settlement, appeared to have been the cause of the present proceeding; but there was no evidence that he had made any request for the correction of any errors, or expressed any dissatisfaction to Betton.

No regular guardianship account was produced or appeared to have been made, but the appellant offered in evidence divers papers which had the appearance of having been made the basis of the settlement in part, and to have gone at the time into the possession of George Kittredge, from which it seemed probable that there must have been errors and overcharges in the settlement. There was evidence tending to show that George Kittredge was not a young man of business habits, but nothing to show that he might not have fully examined and understood the accounts presented.

Upon the evidence offered, the appellant moved that the appellee should be required to present and settle an account of the guardianship, as if no settlement had been made between the parties.

*Porter*, (with whom were *James Bell* and *Pillsbury*,) for the appellant, after an examination of the evidence to show that there were errors and over-charges, and that Betton must have taken advantage of the confidence of Kittredge, contended that Betton by his bond was bound to settle his guardianship account before the judge of probate. This he has never done. 2 *Story's Eq.* § 1353. We suppose that judges of probate in this state have substantially the same powers and duties as the court of chancery in England. In 1 *Story's Eq.* § 523, the broad principle is laid down that mistake, omission, accident or fraud, or undue advantage, vitiate all accounts stated between whatever parties. We think the evidence brings us within this principle. But we contend that we may call upon Betton or his representative to settle his guardianship account in the probate court, as matter of right, without shewing the settlement with George to be tainted by accident, mistake, omission or fraud.

In cases between attorney and client, the *onus* of proving the account correct is not on the client but on the attorney. 1 *Story's Eq.* § 306 *to* 315. So between trustee and *cestui que trust*, it lies on the trustee.

In cases between guardians and wards, courts of equity will not permit transactions to stand which occur within a short period after the minority has ceased; nor unless all the duties attached to the situation have been performed, the accounts between them fully settled, and the estate put from under the guardian's control. The other side may say that, in this case, the intermediate period was not short. The time is but of little moment. The true question is, did George, by the lapse of time, become more, or less independent of his guardian? In this point of view it is proper to advert to the

circumstances of the case, and to the letter of attorney authorizing Betton to dispose at his discretion and pleasure of all George's real estate ; and while all this was transacting, no guardianship account had been settled, but this first duty of a guardian had been postponed till George, by the entaglement and *finesse* of the guardian, had lost the moral power of asserting his rights against his guardian, supposing he understood them.

Now to enable a guardian and ward to stand on equal ground, and deal with each other at " arms length," as it is phrased, it is pre-requisite that the guardianship account be settled and the estate delivered up to the ward. Until this is done, lapse of time operates against, rather than in favor of the ward.

The reason of the English rule laid down in 2 *Williams'* *Executors* 1138, that executors shall have no allowance, may well be urged in illustrating the danger of such settlements.

The 4th volume of the *Law Reporter* 155, gives this abstract from 1 *Meigs' R.* 342. "A receipt obtained by a guardian from his ward, acknowledging satisfaction of all demands against him, though given after the majority of the ward, will be no bar to the guardian's accounting in equity with the ward." See 1 *Story's Eq.* § 308, as to dealings by a trustee with his *cestui que trust ;* and the law as to a receipt in full given to an administrator by an heir, or distributee, as stated by Ch. J. *Shaw* in *Wood & a.* vs. *Bard,* 4 *Law R.* 359, *S. C.* 3. *Met.* 74. Such a receipt is no bar to requiring him to render and settle an account in the probate court ; its validity can only be tried in a suit by the signer to recover his share of the estate, and can have no greater effect than if it had been given for a sum certain. Now our position has always been, that we are entitled, the receipt or settlement notwithstanding, to have a settlement in the probate court ; and this we think the authorities sustain. But if the law is otherwise in this state, we put our case in full confidence upon the evidence adduced, that mistakes, omis-

sions, undue advantage and fraud are intermingled, in no small measure, in most of the transactions by this guardian with his ward; and especially in the "settlement" after the ward had attained his majority.

An inability to sustain the settlement can not change or abrogate the legal duty to account. We are not to suffer by reason of the other party's negligence to keep books or accounts. 1 *Story's Eq.* § 448.

*H. F. French*, for the executrix, replied and argued, 1. That there is no evidence of fraud or undue advantage. 2. That there is not proof that the papers produced by the appellant were the full papers used at the settlement. 3. That the errors pointed out by the appellant on these papers are capable of explanation without presuming fraud. 4. That the bondsmen can not be charged on account of errors, if these errors do not prove a balance due to George at *all* times after he was of age.

PARKER, C. J. We do not see any cause, upon farther consideration, to change the views we have heretofore entertained and expressed, respecting the proper mode of proceeding in this case. We have no doubt that the judge of probate might have ordered, and, if cause had not been shewn to the contrary, it would have been his duty to have ordered an entire account; for the condition of the bond required an account to be rendered in the probate court. What the judge of probate might have done upon the hearing of the petition before him, this court, sitting as a court of probate, may do on the appeal. But a ward, who has become of full age, may receive the money due him and give a receipt for it without an accounting in the probate court; and, if he pursue such course several years after be becomes of age, instead of having a regular account rendered, he is not entitled afterwards to insist that the guardian, who stands with a discharge in his hand, the fairness of which is unimpeached,

Kittredge v. Betton.

should be required to state and place upon the records of the probate court the items of a *settled* account; and the court should not require it. The administrator of the ward's estate can stand in no better situation than the ward himself, in this particular. The burden is therefore clearly on the part of the appellant to impeach the settlement which has been made, before he can ask the court to interfere.

We have examined the evidence which he has adduced for this purpose, and are of opinion that the settlement is not so far impeached as to require that a full account should be rendered, more especially as the guardian himself is now dead.

The testimony fails to show that George Kittredge, the former ward, had not a sufficient knowledge of business to understand and settle an account of that character. He may not have been a young man of business habits, but his general intelligence is not impeached.

The probable influence of the guardian might have furnished a ground of objection, if the account had been settled soon after the ward became of age, but the settlement appears to have been made more than three years afterwards; and if the influence may not be supposed to have ceased after that lapse of time, it would be difficult to say that a settlement between a guardian and his former ward at any time, however remote, could escape suspicion.

Nor can the fact that the relation of attorney and client existed afterwards, and that the settlement embraced matters connected with that relation, affect this case, without some more evidence of probable influence upon the guardianship account from that cause, than is shown in this case. No accounts between the parties, except such as relate to the guardianship, are involved in the present proceedings.

In addition to this, George Kittredge lived more than a year and a half after the settlement, without instituting any proceedings, or even making any claim for the correction of errors. If among his papers there was a memorandum indi-

cating dissatisfaction with the settlement, neither he nor his representatives, after such a lapse of time, should ask for an entire accounting anew, except upon evidence of fraud, even if Betton were now living.

The evidence fails to show fraud. It seems from the testimony before us that there were errors in the settlement. It is probable that some matters were, in fact, twice charged, once in specific items, and again by being included in a general charge of a bill of costs. This may have been by design; but the evidence does not show it, and we cannot presume it. Perhaps if Betton were now living, we might consider his omission to give explanations of some of the matters which appear to be erroneous, as authorizing more decided inferences against him. The omissions of his executrix to give explanations of matters included in the settlement respecting which, from the nature of the case, she cannot be presumed to have equal knowledge, is certainly much less significant.

There may be an over-charge in a large item for the board of the ward, but the item is one that would be likely to attract attention and be canvassed by the parties on the settlement.

There are some other matters, in relation to which it is rendered probable that mistakes may have occurred.

The settlement ought not to protect Betton, or his estate, in charging what was not due or more than was due. All claims arising from errors, mistakes, omissions and even overcharges, should be accounted for; and this is as far as we can go. The account may be considered as in the probate court, and the appellant may object to it, as on leave to surcharge and falsify. It is said that no full statement of the account as settled is to be found among the papers of the ward, or those of the guardian; but divers memoranda in the handwriting of the guardian, and bearing marks of having been used upon the settlement, are among the papers of the ward. If the ward has not taken and preserved a regular statement

of the items, and can not find evidence of one among the papers of the deceased guardian or elsewhere, that may or may not be unfortunate for his estate. His administrator, certainly, can not so readily and fully show what, if any, errors and mistakes occurred. But this neglect, whether it be on one or both sides, to preserve a statement in detail of the settlement, can furnish no reason why we should require the executrix of the guardian, at this late date, to take upon the estate the burden of now stating and vouching a new account. It may be to the prejudice of the guardian's estate that a full statement of the settlement is not to be found. If so, it only suffers thus far from the neglect of the guardian. Enough is shown to put the estate on its defence against such evidence of errors in the settlement as may be produced by the appellant. And for the purpose of an investigation of these matters, the court will appoint an auditor.

The decree of the court was, *in substance*, that, it appearing that an accounting and settlement was had between the guardian and ward in their lifetime, purporting to include all matters for which Betton was accountable as guardian, and $2300 found due to Betton and so certified by them in writing, August 16, 1838; and there also being evidence tending to show that there were divers errors, mistakes and over-charges in Betton's guardian account, on which that settlement was founded; that the decree of the judge of probate be reversed, and that the appellant have leave to surcharge and falsify that account and settlement, so far as the guardian's account is involved therein; and that the executrix render to the appellant a guardianship account in the premises, and therein account for, and be charged with all sums for which it is made to appear that Betton ought to have accounted as guardian, and for which he has not so accounted to said George Kittredge, and also for the amount of all over-charges in any matter relating to his accounts as

guardian in the settlement aforesaid, and for all errors and mistakes occurring therein.

An auditor was also appointed to take such account, and to report to this court as soon as may be.