## CLARKE, ADM'R. *v.* CLAY.

31 393
66 403
66 434

Where the heirs of an estate, being of full age and capable, settle the estate between themselves, without administration thereon and without fraud, their agreements will be binding upon them.

If administration is taken on an estate and bonds are given to a judge of probate, and a settlement is subsequently made, out of court, by the heirs with the administrator, such settlement will not be conclusive upon the parties, but will be evidence for the consideration of the judge of probate, in deciding whether a further settlement shall be ordered and the accounts examined or not.

A settlement, out of court, between the heirs and the administrator of an estate, is not a compliance with the condition of the bond, given to the judge of probate, to render an account when required in the probate court.

Where the administrator on an estate made out his account chiefly in gross sums, and the sole heir signed a certificate at the bottom of the same, stating that "having examined the above account, he assented to the allowance thereof, by the judge of probate, as a correct and legal account"—*held*, that the certificate was not conclusive, and that the judge of probate might order an examination of the accounts and vouchers, if he thought proper.

Upon a controversy between the administrator and heirs of an estate, charges by the administrator for time and money expended while endeavoring to effect a private settlement with the heirs, are not proper items of charge against the estate as expenses of administration.

Where an appeal is taken from the decree of a judge of probate, if the appellee prevails, in relation to the most important matters in controversy, the appellant will not be entitled to costs, but each party must pay his own costs.

APPEAL from the decree of the judge of probate, taken by William M. Clarke, administrator of the estate of Polly Clay, late of Thornton, deceased. The case was committed to an auditor, from whose report the following facts appeared.

On the 18th day of April, 1850, Polly Clay died intestate, leaving her husband, Nathan Clay, the appellee, her sole heir. William M. Clarke, the appellant, was soon after duly appointed administrator on her estate; and this controversy is between the said administrator and the said Nathan Clay.

On the 8th of September, 1853, the following account was made out.

" The account of Wm. M. Clarke, admr. of the estate of Polly Clay, late of Thornton, deceased.

| The said admr. charges himself with the amount of personal estate of said deceased, as per inventory returned, | $539 | 46 |
|---|---|---|
| Paid into court in action vs. Sawyer, | 53 | 00 |
| Interest on personal property, | 20 | 04 |
| | 612 | 50 |

| And said admr. discharges himself as follows, to wit : Paid funeral charges of deceased and for grave stones, | $37 | 50 |
|---|---|---|
| Expenses of administration, | 82 | 85 |
| Paid Nathan Clay, (sole heir,) | 500 | 00 |
| | 620 | 35 |

And to this account was added the following certificate.

" I, Nathan Clay, husband of the said Polly Clay, deceased, having examined the. above account, do assent to the allowance thereof by the judge of probate as a correct and legal account.

(Signed) NATHAN CLAY."

The statement of the foregoing account was the result of an agreement between the administrator and Clay, it appearing that no such sum as $500 had been paid to Clay ; that the administrator's account was a long one, and many bills had been paid out in a litigation connected with the estate ; and Clay gave to Clarke his note for $54, and the above account was made out for the purpose of settling the estate with the judge of probate.

No vouchers were used in the examination of the account between the parties; but Clarke estimated that $54 was due to him over and above what he received, and Clay finally agreed to it, and gave his note for that sum, and rather reluctantly signed the above certificate.

On the third Tuesday of November, 1853, the administrator attended the probate court at Plymouth, for the purpose of settling his account, but finding that opposition was to be made to it he left the court, and the case was continued till the third Tuesday of December following. At that court, the administrator contended that the judge of probate ought not to require any investigation into his accounts, because the sole heir had agreed to the settlement, as stated in the account. But the judge declined to be governed by the settlement between the administrator and the heir, and required the production of accounts and vouchers, which the administrator refused to produce. The judge thereupon charged him with the whole assets that had come into his hands, and allowed him nothing in discharge. From that decree the administrator appealed, and assigned the following reasons therefor.

1. Because the said judge, by his said decree, erroneously rejected and disallowed the following charges, made by the said administrator against said estate, and which should have been allowed him in full discharge of the said sum of $612,50, with which said administrator charged himself as aforesaid, to wit:

Paid funeral charges of deceased and grave stones, $37 50
Expense of administration,................... 82 85
Paid Nathan Clay, (sole heir,)................ 500 00
                                              --------
                                              620 35

2. Because the said court refused to allow and approve said administration account, (including the said charges against said estate,) although Nathan Clay, the surviving

husband of said Polly Clay, and who was alone entitled to her personal estate, assented to the allowance of the said account, and no person interested in said estate appeared to object to any part thereof.

3. Because the said court disallowed said administrator's account, the particulars whereof are stated in the schedule referred to in said account and filed therewith, for the funeral charges and for the grave stones for the said Polly Clay.

4. Because said court disallowed said administrator's charge against said estate, in said account, for the expense of administering said estate, the particulars of which are contained in the schedule referred to in said account, and filed therewith.

5. Because the said court disallowed the items of $500, charged by said administrator, in said account, as paid over to said Nathan Clay.

Upon an examination of the evidence, the auditor found forty-five items of the administrator's account, amounting to $352,85, to be correct. On twenty-four other items, claimed at $21,25, the auditor found the amount due to be $12. On nine other items, claimed at $72,60, the auditor found due $50. On three other items, claimed at $18,25, the auditor found due $12. The balance of a bill due from the administrator to his counsel, of $17,65, was also found to be correct, though unpaid. The auditor likewise found that the administrator had paid Clay, in cash, the sum of $184,42. And a charge of $3, for attending the probate court at Plymouth, he also allowed.

The administration claimed, further, the sum of $15,50, of which $6,50 were for attendance and expenses at the probate court in December, and $9 for going to Thornton twice, to see Clay about the business, and also to consult counsel. And the auditor submits to the court whether these items should be allowed.

The report of the auditor is quite voluminous, embracing much of the testimony taken on the hearing, but the mat-

Clarke *v*. Clay.

ters in dispute are not numerous, and the preceding statement is believed to be sufficient to explain the decision.

*Bell,* for the appellant.

1. As there are no unsettled claims against the estate of Polly Clay, the intestate, the appellee, her husband, is the only party interested in her estate. *Judge of Probate* v. *Chamberlain,* 3 N. H. Rep. 129. And as he has settled with the administrator, and agreed to his account, and assented to its allowance by the probate court, there being no evidence in the case of either fraud or mistake, the administrator should not be required to settle another account, containing the particular items embraced in that already settled. *Gilett* v. *Churchill,* 5 N. H. Rep. 337 ; *Hibbard* v. *Kent,* 15 N. H. Rep. 516 ; *Kittredge* v. *Betton,* 14 N. H. Rep. 411.

The report of the auditor, in substance, negatives the existence of any fraud or misrepresentation. Clay, who could have testified to it, if it had existed, was not offered as a witness. When he settled the appellant's account, he acted not merely upon his representations, but upon his own knowledge of Clarke's services and expenditures. The auditor expressly finds that it fully appeared that the investigation of the claim for embezzlement against Sawyer, and the prosecution of the action against him, were with Clay's knowledge and consent.

The fact that the auditor might have found that the services of the administrator were worth somewhat less than he has charged for them, does not show fraud. He has charged for no service that was not performed ; and both the parties, who were the best judges of the value of the services, as between themselves, have agreed to their amount and value.

And there is no pretence of haste or surprise, in relation to this setttlement, but, on the contrary, the parties met on two different occasions, and deliberately, after the produc-

tion of his account books by the administrator, and an invitation to Clay to examine them, agreed upon the balance due the administrator.

The second statement of the account by the auditor, which is predicated upon the account as settled by the parties themselves, shows that there was no error. J. Bell's account was properly included, because the administrator, if he had not paid it, was liable for it in his personal capacity.

2. The parties stood in no such relation to each other as seems to be supposed by the appellee's counsel, as would invalidate or cast a suspicion upon any settlement which they might make. It was not like the case of a transaction between guardian and ward, or attorney and client.

. 3. As this is not in its nature a rehearing of the case upon the same testimony which was adduced in the probate court, it is not material or necessary to inquire what that evidence was, or how far it warranted the decree. If that were the question, we contend that the court should have allowed the account when assented to by the only party interested. But the question is, what decree should be rendered by this court on the evidence now before it.

And, in this view of the case, it may be proper to take into consideration the items reported, as the expenses of obtaining a settlement of the account, amounting to $15,50, which are now due to the appellant, and should, in some way, be allowed him.

4. It was the duty of the administrator, at the request of Clay, to commence and carry on the suit against Sawyer. *Griswold* v. *Chandler*, 5 N. H. Rep. 492.

5. The parties having, as a matter of convenience, agreed, in substance, that the appellant's services, advances and payments to Clay should, in the settlement of the account, be briefly stated as " payments " to Clay, the appellee is precluded from making the formal objection that all the account may not strictly come under that designation.

In many cases, what a party receives, or what he agrees

Clarke *v.* Clay.

shall be regarded as money, may be allowed and even declared for as money.

*Rogers*, with whom was *Vaughan*, for the appellee.

The report of the auditor finds that the agreement as to how the administrator and Clay (the heir) should settle, was made at the administrator's house; that the administrator's representations and assertions, as to the state of his accounts and services, were the sole foundation for that agreement; that Clay examined no accounts or vouchers.

That when the certificate of settlement was finally made at Gilford, it was in the presence of Mr. Vaughan, who made the papers; that no accounts, charges or vouchers were there produced, nor were such then nor at any other time examined by Clay.

That Clay did then object to signing the certificate of settlement, but was finally induced to do so, and also to give his note to Clarke for $54, which is now outstanding against him, by the administrator's representations and assertions that every thing was right; Clay, in truth, knowing nothing of the facts, but relying upon and believing the administrator's representations and declarations.

The administrator's assertions and representations were false and fraudulent; made for the purpose of deceiving Clay, and procuring a settlement without an exhibit of his account, and, therefore, cannot bind him.

The auditor finds that the administrator's account and charges were not " all right," as he represented, and he has made many deductions therefrom.

The facts reported show that the $54 note, and also Clay's signature to the certificate of settlement, were obtained solely through the administrator's representations that " it was all right," without Clay's having any personal knowledge in the matter; and that the assertions and representations were false and fraudulent, and made for the purpose of defrauding Clay.

The fraud of the administrator, that is, his false representations to Clay, vitiates and destroys the validity of whatever settlement there may have been, and entitles the heir to open the account and to have a settlement, by the production of the administrator's books and vouchers.

Again, we believe that a certificate of the kind here described can, at any time before final settlement with the judge of probate, be disavowed by the heir, and a settlement upon accounts and vouchers be had in the probate court.

It is the prerogative of the court to protect the interests of its wards. And had it not this power, the craft and overpowering influences of guardians and administrators might set at defiance the rights of heirs and wards and the power of the court.

The judge of probate has authority to call for vouchers and accounts, and the administrator's refusal, in this case, to account, justifies the decree against him. There could have been none other.

The charges made subsequent to November 6, 1853, are not chargeable to this estate, having been incurred in a personal quarrel between the administrator and heir, and not for the benefit of the estate.

There should be such order by the court as will protect the heir in his rights, and relieve him from the payment of the $54 note, now in the administrator's hands.

EASTMAN, J. Upon the state of facts reported by the auditor, the first question presented is, whether the judge of probate decided correctly, in requiring the administrator to produce his accounts and vouchers for the same.

We have, in our reports, three decisions which bear upon this question.

*Giles* v. *Churchill*, 5 N. H. Rep. 337, was where the heirs of an intestate estate agreed to administer the estate without letters of administration, and one of them paid a

creditor of the deceased his debt in goods belonging to the estate of the intestate, and it was held that *another* of the *heirs*, who was afterwards duly appointed administrator of the estate of the deceased by the judge of probate, could not maintain trover against the creditor for the goods he had received.

And in *Hibbard, adm'r.* v. *Kent & a.*, 15 N. H. Rep. 516, it was held that where all the parties beneficially interested in the estate of a deceased person, being of age and capable, have adjusted and settled the matter, without mistake or fraud, each taking his agreed share and giving the others a discharge, and all the demands against the estate are settled, an administrator subsequently appointed, even if he is not an heir, cannot be allowed to defeat the arrangement and maintain trover against the parties for the property so received by them.

In *Kittredge, adm'r.* v. *Betton*, 14 N. H. Rep. 401, it was held that a settlement, out of court, between a guardian and his former ward, who has come of age, and a release to the guardian, is not a compliance with the condition of his bond, which requires his guardian to render an account, when required, in the probate court. But the judge of probate may receive it as evidence that he ought not to be required to settle a farther account.

The principle of these cases is this, that where the heirs of an estate, being of full age and capable, undertake to settle the estate between themselves, without administration, courts will endeavor to enforce those agreements. But where administration is taken, or a guardian appointed over a ward, and a settlement is made with the administrator or guardian, such settlement will not be conclusive upon the parties, but will be evidence for the consideration of the court in deciding whether a further settlement shall be ordered or the accounts examined.

This distinction is clearly recognized in both of the last cases cited. In *Kittredge* v. *Betton, Parker*, C. J., says

" we have no doubt that the judge of probate might have ordered, and if cause had not been shown to the contrary, it would have been his duty to have ordered an entire account; for the condition of the bond required an account to be rendered in the probate court." And in *Hibbard* v. *Kent*, the same distinguished judge speaks of the difference between that case and the case of *Kittredge* v. *Betton*, there being, as he says, in the latter case, a bond to the judge of probate.

And the distinction taken in these cases appears to be well founded. In the one class of cases, all the parties interested settle an estate without resort to the forms of law, and such settlement, fairly and understandingly made, should be binding. In the other class, the legal course is taken, a bond is given, and the estate is placed in the hands of the judge of probate for settlement; and it is for the judge to say whether he will be governed by what the parties do or not. If he is satisfied that a fair and honest settlement has been made, without deception or overreaching in any way, he would receive that as the basis of his action; but if for any good cause he thinks that the account should be fully examined, it is within his discretion so to say.

In the present case, the administrator insisted that the judge of probate should take the certificate of the heir as conclusive of the correctness of the settlement, and pass a decree accordingly. This he declined to do. For what reason is not stated. But if it was made to appear to him that the settlement did not show the true state of the case, that the heir had agreed to it reluctantly, without having the full accounts and vouchers before him, as is found by the auditor, then he might very properly decline to pass the decree without an examination of the accounts and vouchers.

This is not the case of a settlement without administration, as was that of *Giles* v. *Churchill* and of *Hibbard* v.

*Kent,* and it was within the discretion of the judge to order an examination of the accounts and vouchers, if he thought it should be done.

This court, sitting as a court of appeal, may examine the accounts in the same manner that the judge of probate might have done, had they been before him. This we have done upon the report of the auditor. And we think the account should stand thus :

| | | |
|---|---|---|
| The administrator should be charged with the amount of the inventory and other credits, in the manner stated in his accounts, and about which there is no controversy, being,................ | $612 | 50 |
| He should then be allowed the forty-five items, stated by the auditor to be correct, and which we find to be so, being...................... | 352 | 83 |
| Also the three other sums of $12, $50, and $12, found by the auditor to be correct, and which we also find to be so, being..................... | 74 | 00 |
| Likewise the $17,65, due his counsel,........... | 17 | 65 |
| Also the sum paid the heir, deducting therefrom the $54 note which Clay gave him, leaving.... | 130 | 42 |
| | 574 | 90 |

The note was equivalent to a repayment of that sum to Clarke. For aught that appears, it may have been immediately transferred by the administrator.

He should also be allowed the three dollars for attending the probate court in November, and the $6,50 for attending the same in December. No notice had been given him of opposition to the settlement of his account, and it was but right that he should have a continuance to examine the matter.

But the charges for going to see the heir, to negotiate with him, should not be allowed. They were expenses in-

curred by the administrator, upon his own motion, and not for the estate.

The several items for which the administrator should be allowed, amount to $584,40, which, deducted from the amount in his hands, would leave due the estate $28,10, and for this sum the administrator should be charged.

The result, then, is, that although the judge of probate was right in the decision which he made, yet the decree, as it stands, must be reversed, and the account must be settled upon the grounds above stated, that is, by charging the administrator with the $612,50, and giving him credit for $584,40, leaving a balance due the estate of $28,10.

As to the question of costs of this appeal, although the appellant has succeeded in form, yet the ruling of the judge of probate was correct; and as the appellee has prevailed in relation to the most important matters in controversy, the appellant is not entitled to costs, but the parties must pay their own costs, respectively. *Griswold* v. *Churchill*, 6 N. H. Rep. 61; *Leavitt* v. *Worster*, 14 N. H. Rep. 566; *Mathes* v. *Bennett*, 1 Foster's Rep. 188; *Kingman* v. *Kingman, ante,* p. 182.